## The People ex. rel. E. C. Seaman v. Charles G. Hammond, Auditor General.

On the sale of land for the taxes of 1837, the relator became the purchaser and received the county treasurer's certificate of sale, which, by the provisions of the statute under which the sale was made, (Laws 1833, p. 96, § 15,) would entitle him to a deed of the land within two years from the time of the sale, unless the same was sooner redeemed. Afterwards, and before the time of redemption had expired, the same land was again sold for the taxes of 1838, and, having been bid off on the last sale, for an amount exceeding the amount of taxes, interest and charges due thereon, the surplus was, under the provisions of the statute, (R. S. 98, § 16,) deposited in the state treasury, to the credit of the *owner or claimant* of the land, and remained there until after the time for redemption under the sale for the taxes of 1837 had expired, and a deed of the land had been executed, by the county treasurer, to the relator, in consummation of that sale. The relator then claimed this surplus money. *Held*, that he was not entitled to receive it, he not being the *owner* of the land within the meaning of the statute.

*Held*, that the relator did not become the *owner* of the land, until the deed to him, from the county treasurer, was executed.

*Held*, also, that the right to such surplus was personal, and did not follow with the title to the land; and that the person who was the *owner*, or who had the legal title to the land, when it was sold for the taxes of 1838, was entitled to receive it.

Motion for a mandamus. On the 5th day of October, 1840, Seaman, the relator, became the purchaser of a certain quarter section of land, on a sale of the same by the proper county treasurer, for the delinquent taxes of the year 1837, and received from the treasurer a certificate of the sale, which entitled him to a deed of the land after the expiration of two years from the sale, unless the same was sooner redeemed. No redemption having been made, a deed of the land was, after the expiration of the two years, executed by the county treasurer, to the relator, in consummation of the sale. On the first Monday of August, 1842, and before the relator became entitled to the deed, the same land was again sold for the taxes of 1838, and was bid off by the purchaser, for a sum largely ex-

People *v.* Hammond.

ceeding the taxes, interest and costs chargeable thereon, leaving a surplus to be deposited, under the law then in force, with the State Treasurer, " to the credit of the proper *owner* or *claimant"* of the land.

On the 15th day of December, 1842, the relator presented to the respondent, Auditor General of the state, his affidavit of the foregoing facts, and also his deed of the land from the county treasurer above mentioned, and demanded a warrant upon the State Treasurer for the surplus money above mentioned—claiming that he was entitled to the money as owner or claimant of the land.   The Auditor General refused to issue the warrant, and, upon affidavit of the above facts, application is now made to this Court, by the relator, for a mandamus to compel him to do so.

*E. C. Seaman,* the relator, in support of the motion.

*E. Farnsworth,* Attorney General, contra.

RANSOM, C. J. delivered the opinion of the Court.

The sale of the land to the relator, for the unpaid tax of 1837, was made pursuant to the statute of 1833, (Laws 1833, p. 96, § 15,) which provides that on the sale of any land for taxes, the treasurer shall give to the *purchaser* of any such land, a certificate in writing, describing the land purchased, and the sum paid therefor, and the time when the *purchaser* will be entitled to a deed for the said land; and, if the person claiming title to the land described in said certificate, shall not, within two years from the date thereof, pay the treasurer, for the use of the *purchaser,* his heirs or assigns, the sum mentioned in such certificate, together with the interest thereon, at the rate of 20 per cent per annum, from the date of the said certificate, the treasurer shall, at the expiration of the said two years, execute to the *purchaser,* his heirs or assigns, a convey-

ance of the lands so sold ; which *conveyance* shall vest in the person to whom it shall be given, an absolute estate in fee simple, subject to the claims of the territory of Michigan thereon.

Under this provision the relator became entitled to a deed of the land in question, on the 5th day of October, 1842.

Prior to that day, the same land was again sold for the tax of 1838. The Revised Statutes, under which the last sale was made, provides, (R. S. 97, § 14,) that after such payment shall have been made, (referring to the amount bid for the land,) the treasurer of the county shall give to the *purchaser*, a certificate in writing, describing the lands purchased, &c.

The 15th section of the same act provides, that all moneys received on such sales, shall be *forthwith* transmitted to the State Treasurer, or deposited in some bank, under his direction, and subject to his order.

The 16th section enacts, that so much of the money so received as shall be equal to all the unpaid taxes, charges and interest thereon, shall be paid into the state treasury, and constitute a part of a fund for the redemption of certain stocks, " and the balance shall be deposited in the state treasury, to the credit of the proper *owner* or *claimant* of said parcel of land, which shall be entered on the books of said treasurer in a just and proper manner."

Section 17 provides that the *owner* of any land sold for taxes shall, *at all times*, be entitled to receive from the State Treasurer the amount of money deposited in the treasury to the credit of such owner, upon making proof, satisfactory to the Auditor General, that he is the proper owner, and giving a receipt for the same.

Section 19 enacts, that the Auditor General shall, upon the presentation of the certificate, execute to the *purchaser*, his heirs or assigns, in the name of the people of this

state, a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee.

It will be perceived that by the Revised Statutes, under which the relator asserts a right to the money in question, the *owner* or *claimant*, only, is entitled to receive it from the Treasurer.

That the person applying for the money, is the proper owner, within the intent and meaning of the statute, must be proved to the satisfaction of the Auditor General. Not that he can capriciously or arbitrarily decide whether or not the proof in a given case is satisfactory, but, such proof must be adduced, as would be reasonably, legally sufficient, to establish the ownership of the claimant.

Are the facts, which are alleged to have been submitted to the respondent in this case, sufficient to prove that the relator was, on the first Monday of August, 1842, the *proper owner* of the land in question, so as to be entitled to receive the surplus money which accrued from the sale of it ?

To justify an affirmative answer, it must appear that he was such *owner* on the day of the sale.

He contends that he was so ; that, to adopt the language of his argument, the moment he purchased the land at the tax sale in October, 1840, he became the owner thereof; that his right, being in its nature complete and perfect, subject only to a defeasance or condition, could only be defeated by the former owner's paying certain moneys to the county treasurer. We think the statute will not bear the construction he claims for it.

It is to be borne in mind, that whatever *ownership*, or title to the land the relator had, was acquired under the statute of 1833.

In that statute, whenever mention is made of the person who buys land at a tax sale, he is denominated the *purchaser*, and no title whatever to the land sold, vests in

him, until, at the expiration of two years, he receives the treasurer's deed—"which conveyance," says the statute, "shall vest in the person who receives it, an absolute estate in fee simple." Prior to that conveyance, he has only a lien upon the land for the re-payment of the amount of the tax paid, with twenty per cent interest; he has no right to interfere with the possession of the owner; he cannot enter upon the land for any purpose whatever, nor can he control the rents and profits.

If, then, it was the conveyance by the treasurer, and not the purchase at the tax sale, which made the relator the owner of the land, he did not become such owner until the 5th day of October, 1842.

Was he, then, the owner, in time to entitle himself to the surplus money which he claims?

That is to be determined, as we have seen, by the Revised Statutes. In every section of the statute upon this subject in which mention is made of the original proprietor of the land, and of the person who buys it at the tax sale, a distinction, that cannot be mistaken, is observed; the first is denominated the *owner* or *claimant;* the latter is called the *purchaser.*

There is not a provision of either the statute of 1833, or of 1838, upon this subject, in which the person who bids off land at a tax sale, is called the owner, prior to his receiving the treasurer's deed; but, as I have before said, he is termed the purchaser, and the former proprietor the owner.

It is perfectly clear that the individual who has the legal title to the land at the time of the tax sale, is the owner, entitled, under the statute, to the surplus money, if any there be.

The moneys received on the tax sales are to be forthwith forwarded to the State Treasurer, and he, on their re-

People *v.* Hammond.

ceipt, is to place the surplus to the credit of the owner, who shall at all times be entitled to receive it.

The individual whose land was sold might have claimed and received the surplus the day following the sale, had it reached the state treasury so soon,—two months before the relator's title vested.   Suppose he had done so, and, upon proof of the facts now before us, the money had been paid to him?   Will it be seriously contended that the relator could have successfully claimed it, either of the treasurer, or the person to whom, as owner, it had been paid?   Clearly, he could not.

The surplus money produced by the tax sale, is the property of the person who has the legal title to the land at the time of the sale, and the moment the amount is ascertained and passed to his credit in the books of the treasurer, it is as absolutely his as though it were in his own keeping; and the right is personal—as unqualifiedly so as the ownership of any chattel; and although the surplus spoken of, is produced by the sale of land, yet the right to receive and control it, no more follows the title to the land, than does the ownership of the cattle and farming utensils that a man may happen to have on his farm when it is sold for taxes, and the purchaser may, with as much propriety, claim a right to the latter as the former.

Is the right of the owner to the surplus changed or affected, in the slightest degree, by permitting the money to remain in deposite in the treasury, until his right to redeem his land shall have expired?   No one will pretend it.

I confess I am unable to discover any principle, either of law or equity, that will sustain the claim preferred by the relator in this case.

The application must be denied.

*Mandamus refused.*