*PRELIMINARY PRINT*

VOLUME 601 U. S. PART 2

PAGES 285–293

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

APRIL 15, 2024

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## DeVILLIER et al. *v.* TEXAS

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

No. 22–913.  Argued January 16, 2024—Decided April 16, 2024

Richard DeVillier and more than 120 other petitioners own property north
of U. S. Interstate Highway 10 between Houston and Beaumont, Texas.
The dispute here arose after the State of Texas took action to use por-
tions of I–10 as a flood evacuation route, installing a roughly 3-foot-tall
barrier along the highway median to act as a dam.  When subsequent
hurricanes and storms brought heavy rainfall, the median barrier per-
formed as intended, keeping the south side of the highway open.  But
it also flooded petitioners' land to the north, causing significant damage
to their property.  DeVillier filed suit in Texas state court.  He alleged
that by building the median barrier and using his property to store
stormwater, Texas had effected a taking of his property for which the
State must pay just compensation.  Other property owners filed similar
suits.  Texas removed the cases to federal court, where they were con-
solidated into a single proceeding with one operative complaint.  The
operative complaint includes inverse-condemnation claims under both
the Texas Constitution and the Takings Clause of the Fifth Amendment.
As relevant, Texas moved to dismiss the federal inverse-condemnation
claim, arguing that a plaintiff has no cause of action arising directly
under the Takings Clause.  The District Court denied Texas' motion,
concluding that a property owner may sue a State directly under the
Takings Clause.  The Fifth Circuit reversed, holding "that the Fifth
Amendment Takings Clause as applied to the states through the Four-
teenth Amendment does not provide a right of action for takings claims
against a state."  53 F. 4th 904 (*per curiam*).

*Held*: DeVillier and the other property owners should be permitted to
pursue their claims under the Takings Clause through the cause of ac-
tion available under Texas law.  The Takings Clause of the Fifth
Amendment states: "nor shall private property be taken for public use,
without just compensation."  The Court has explained that "a property
owner acquires an irrevocable right to just compensation immediately
upon a taking" "[b]ecause of 'the self-executing character' of the Tak-
ings Clause 'with respect to compensation.'"  *Knick* v. *Township of
Scott*, 588 U. S. 180, 192 (quoting *First English Evangelical Lutheran
Church of Glendale* v. *County of Los Angeles*, 482 U. S. 304, 315).  The

question here concerns the procedural vehicle by which a property
owner may seek to vindicate that right. Constitutional rights do not
typically come with a built-in cause of action to allow for private en-
forcement in courts, see *Egbert* v. *Boule*, 596 U. S. 482, 490–491, and so
they are asserted offensively pursuant to an independent cause of action
designed for that purpose, see, *e.g.*, 42 U. S. C. § 1983. DeVillier relies
on *First English* and other cases to argue that the Takings Clause cre-
ates by its own force a cause of action authorizing suits for just compen-
sation. But those cases do not directly confront whether the Takings
Clause provides a cause of action. It would be imprudent to decide
that question without first establishing the premise in the question pre-
sented that no other cause of action exists to vindicate the property
owner's rights under the Takings Clause. Texas state law does provide
an inverse-condemnation cause of action by which property owners may
seek just compensation against the State based on both the Texas Con-
stitution and the Takings Clause. This case therefore does not present
the circumstance in which a property owner has no cause of action to
seek just compensation. The Court therefore remands so that DeVillier
and the other property owners may proceed through the cause of action
available under Texas law. Pp. 291–293.

53 F. 4th 904, vacated and remanded.

THOMAS, J., delivered the opinion for a unanimous Court.

*Robert J. McNamara* argued the cause for petitioners.
With him on the briefs were *Andrew H. Ward*, *Christen
Mason Hebert*, *Daniel H. Charest*, *E. Lawrence Vincent*, and
*Charles Irvine*.

*Aaron L. Nielson*, Solicitor General of Texas, argued the
cause for the State of Texas. With him on the brief were
*Lanora C. Pettit*, Principal Deputy Solicitor General,
*Natalie D. Thompson*, *Kateland R. Jackson*, and *Sara B.
Baumgardner*, Assistant Solicitors General, *Ken Paxton*, At-
torney General, *Brent Webster*, First Assistant Attorney
General, and *J. Andrew Mackenzie*, Assistant Attorney
General.

*Deputy Solicitor General Kneedler* argued the cause for
the United States as *amicus curiae* urging affirmance.
With him on the brief were *Solicitor General Prelogar*, *As-*

Opinion of the Court

*sistant Attorney General Kim*, *Principal Deputy Assistant Attorney General Boynton*, *Anthony A. Yang*, *William B. Lazarus*, *John L. Smeltzer*, and *Alisa B. Klein.**

JUSTICE THOMAS delivered the opinion of the Court.

Richard DeVillier alleges that the State of Texas took his property for stormwater storage. He sought just compensation under the Takings Clause of the Fifth Amendment, arguing that the Constitution itself authorized him to bring suit. We granted certiorari to decide whether "a person whose property is taken without compensation [may] seek redress under the self-executing Takings Clause even if the

———————

*Briefs of *amici curiae* urging reversal were filed for the American Farm Bureau Federation by *Paul Beard II*, *Susan V. Warner*, *Ellen Steen*, and *Travis Cushman*; for the Atlantic Legal Foundation by *Lawrence S. Ebner* and *Nancie G. Marzulla*; for the Chamber of Commerce of the United States of America by *Jeremy C. Marwell*, *Andrew R. Varcoe*, and *Jonathan D. Urick*; for the National Association of Realtors® et al. by *Brett A. Shumate* and *William J. Strench*; for the Pacific Legal Foundation et al. by *Deborah J. La Fetra*, *Robert H. Thomas*, *Kathryn D. Valois*, *Elizabeth Milito*, and *Ilya Shapiro*; for James W. Ely, Jr., et al. by *Thomas G. Saunders*, *David Tryon*, and *Jay Carson*; for Ilya Somin et al. by *Caroline C. Lindsay* and *Anastasia P. Boden*; and for Ernest A. Young by *Gregg J. Costa*.

Briefs of *amici curiae* urging affirmance were filed for the State of Minnesota et al. by *Keith Ellison*, Attorney General of Minnesota, *Liz Kramer*, Solicitor General, and *Michael Goodwin* and *Colin O'Donovan*, Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Steve Marshall* of Alabama, *Treg Taylor* of Alaska, *Raúl Labrador* of Idaho, *Theodore E. Rokita* of Indiana, *Jeff Landry* of Louisiana, *Lynn Fitch* of Mississippi, *Michael T. Hilgers* of Nebraska, *Matthew J. Platkin* of New Jersey, *Josh Stein* of North Carolina, *Drew Wrigley* of North Dakota, *Dave Yost* of Ohio, *Gentner Drummond* of Oklahoma, *Ellen F. Rosenblum* of Oregon, *Alan Wilson* of South Carolina, *Sean Reyes* of Utah, and *Jason S. Miyares* of Virginia.

*Felicia H. Ellsworth* and *Eric L. Hawkins* filed a brief for Carlos M. Vázquez as *amicus curiae*.

legislature has not affirmatively provided them with a cause of action." Pet. for Cert. i. That question assumes the property owner has no separate cause of action under which to bring a claim based on the Takings Clause. But, that is not the case here. Texas law provides a cause of action that allows property owners to vindicate their rights under the Takings Clause. We therefore vacate and remand so that DeVillier's claims may proceed under Texas' state-law cause of action.

I

Richard DeVillier and more than 120 other petitioners own property north of U. S. Interstate Highway 10 between Houston and Beaumont, Texas.[1] The State of Texas under-took several projects to facilitate the use of that portion of the highway as a flood-evacuation route. It installed a roughly 3-foot-tall barrier along the highway median to act as a dam, preventing stormwater from covering the south side of the road.

In August 2017, Hurricane Harvey brought heavy rain-fall to southeast Texas. The new median barrier per-formed as intended, keeping the south side of the highway open. But, it also flooded petitioners' land to the north, displacing them from their homes, damaging businesses, ruining crops, killing livestock, and destroying family heir-looms. The same thing happened during Tropical Storm Imelda in 2019. As depicted, the median barrier kept the south side of the highway open (on the left side of both pictures) by holding back stormwater, which then sub-merged property north of the highway (on the right side of both pictures):

---

[1] Because this case comes to us at the pleading stage, we assume the truth of the facts alleged in the operative complaint. See, *e.g.*, *Swierkie-wicz* v. *Sorema N. A.*, 534 U. S. 506, 508, n. 1 (2002).

Opinion of the Court



Figure 1



Figure 2

Because heavy rainfall is not uncommon in southeast Texas, the median barrier will continue to cause flooding on DeVillier's land during future storms.

DeVillier filed suit in Texas state court. He alleged that, by building the median barrier and using his property to store stormwater, Texas had effected a taking of his property. DeVillier argued that he was therefore entitled to just

compensation under both the United States and Texas Constitutions. Other property owners filed similar suits. Texas removed the cases to federal court, where they were consolidated into a single proceeding with one operative complaint. The operative complaint includes inverse-condemnation claims under both the Texas Constitution and the Takings Clause of the Fifth Amendment. See *Knick* v. *Township of Scott*, 588 U. S. 180, 186 (2019) ("Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant" (internal quotation marks omitted)).

As relevant, Texas moved to dismiss the federal inverse-condemnation claim, arguing that a plaintiff has no cause of action arising directly under the Takings Clause. It contended that only Rev. Stat. § 1979, 42 U. S. C. § 1983, provides a vehicle to assert constitutional violations, and § 1983 does not authorize claims against a State. DeVillier did not dispute that he intended to bring his federal claim directly under the Fifth Amendment. Instead, he responded that the Takings Clause is "self-executing," which, he argued, means that the Clause itself provides a cause of action for just compensation.

The District Court denied Texas' motion, concluding that a property owner may sue a State directly under the Takings Clause. The Court of Appeals disagreed. In a one-paragraph opinion, it "h[eld] that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." 53 F. 4th 904 (CA5 2023) (*per curiam*).

We granted certiorari to decide whether a property owner may sue for just compensation directly under the Takings Clause. 600 U. S. —— (2023). We now vacate and remand for further proceedings.

## II

The Takings Clause of the Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." We have explained that "a property owner acquires an irrevocable right to just compensation immediately upon a taking" "[b]ecause of 'the self-executing character' of the Takings Clause 'with respect to compensation.'" *Knick*, 588 U. S., at 192 (quoting *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U. S. 304, 315 (1987)). Texas does not dispute the nature of the substantive right to just compensation. This case presents only a question regarding the procedural vehicle by which a property owner may seek to vindicate that right.

Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts. See *Egbert* v. *Boule*, 596 U. S. 482, 490–491 (2022). Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose, see, *e.g.*, 42 U. S. C. §1983. DeVillier argues that the Takings Clause is an exception. He relies on *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles* to assert that the just-compensation requirement of the Takings Clause is "self-executing" and that "[s]tatutory recognition [is] not necessary" for takings claims because they "are grounded in the Constitution itself." 482 U. S., at 315 (internal quotation marks omitted). In other words, the Takings Clause creates by its own force a cause of action authorizing suits for just compensation.

The cases that DeVillier cites do not directly confront whether the Takings Clause provides a cause of action for just compensation. *First English* itself proceeded under a state-law cause of action. *Id.*, at 313–314, n. 8. DeVillier also points to several takings cases where property owners sought injunctions to prevent the Government from interfer-

ing with their property rights, such as by obtaining ease-
ments or imposing zoning regulations. See *Dohany* v. *Rog-
ers*, 281 U. S. 362, 364 (1930); *Delaware, L. & W. R. Co.* v.
*Morristown*, 276 U. S. 182, 188 (1928); *Village of Euclid* v.
*Ambler Realty Co.*, 272 U. S. 365, 384 (1926); *Cuyahoga
River Power Co.* v. *Akron*, 240 U. S. 462, 463 (1916); *Norwood*
v. *Baker*, 172 U. S. 269, 276 (1898). Because none of those
cases relied on § 1983 for a cause of action, he reasons that
those cases must have proceeded directly under the Consti-
tution. But, the mere fact that the Takings Clause provided
the substantive rule of decision for the equitable claims in
those cases does not establish that it creates a cause of action
for damages, a remedy that is legal, not equitable, in nature.[2]
That said, the absence of a case relying on the Takings
Clause for a cause of action does not by itself prove there is
no cause of action. It demonstrates only that constitutional
concerns do not arise when property owners have other ways
to seek just compensation. Our precedents do not cleanly
answer the question whether a plaintiff has a cause of action
arising directly under the Takings Clause.

But, this case does not require us to resolve that question.
The question presented asks what would happen if a prop-
erty owner had no cause of action to vindicate his rights
under the Takings Clause. It would be imprudent to decide
that question without satisfying ourselves of the premise
that there is no cause of action. Our constitutional system
assigns to state officers "a coordinate responsibility to en-
force [the Constitution] according to their regular modes of
procedure." *Howlett* v. *Rose*, 496 U. S. 356, 367 (1990). It
therefore looks to "[t]he good faith of the States [to] provid[e]
an important assurance that 'this Constitution, and the Laws

---

[2] The significance of DeVillier's equitable cases is further obscured by
fundamental changes to the law of equity that postdate those decisions.
Compare Fed. Rule Civ. Proc. 2 with A. Bellia & B. Clark, The Original
Source of the Cause of Action in Federal Courts, 101 Va. L. Rev. 609,
653 (2015).

of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land.'" *Alden* v. *Maine,* 527 U. S. 706, 755 (1999) (quoting U. S. Const., Art. VI; original alterations omitted). We should not "assume the States will refuse to honor the Constitution," including the Takings Clause, because "States and their officers are [also] bound by obligations imposed by the Constitution."  527 U. S., at 755.

The premise that Texas left DeVillier with no cause of action to obtain the just compensation guaranteed by the Takings Clause does not hold.   Texas state law provides a cause of action by which property owners may seek just compensation against the State.   As Texas explained at oral argument, its state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause.   Tr. of Oral Arg. 38; *id.*, at 40 (citing *Baytown* v. *Schrock*, 645 S. W. 3d 174 (Tex. 2022)); Tr. of Oral Arg. 59–60.   And, although Texas asserted that proceeding under the state-law cause of action would require an amendment to the complaint, it also assured the Court that it would not oppose any attempt by DeVillier and the other petitioners to seek one.   *Id.*, at 41, 61, 64.   This case therefore does not present the circumstance in which a property owner has no cause of action to seek just compensation.   On remand, DeVillier and the other property owners should be permitted to pursue their claims under the Takings Clause through the cause of action available under Texas law.

## III

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None