RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TONYA BOWLES, for herself and all those similarly situated,

                  *Plaintiff-Appellee*,

      *v.*

ERIC R. SABREE, in his official and personal capacities; Wayne County Board of Commissioners, also sometimes known as Charter County of Wayne by its Board of Commissioners,

              *Defendants-Appellants*.

         No. 23-1256

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:20-cv-12838; 2:23-cv-10973—Linda V. Parker, District Judge.

Decided and Filed:  November 4, 2024

Before:  McKEAGUE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Nasseem S. Ramin, DYKEMA GOSSETT PLLC, Detroit, Michigan, Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Appellants.  Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, David J. Shea, SHEA LAW, PLLC, Southfield, Michigan, Aaron D. Cox, LAW OFFICES OF AARON D. COX, PLLC, Taylor, Michigan, Mark K. Wasvary, MARK K. WASVARY, P.C., Troy, Michigan, Jason J. Thompson, SOMMERS SCHWARTZ, Southfield, Michigan, Matthew E. Gronda, GRONDA PLC, Saginaw, Michigan, Donald R. Visser, VISSER & ASSOCIATES PLLC, Kentwood, Michigan, for Appellee.

---

**OPINION**

---

NALBANDIAN, Circuit Judge.  For years, Wayne County has held onto money that it owes private citizens.  It foreclosed on and sold people's property to satisfy their tax debts but kept the difference for itself.  This Court, the Michigan Supreme Court, and the United States Supreme Court all agree that this kind of scheme is an unconstitutional taking.  This case is not about whether Wayne County violated the law.  It did.  This case is about how former landowners can get those extra proceeds back.

Wayne County took Tonya Bowles's property and sold it to satisfy her tax debt.  She brought a § 1983 suit against the county and its treasurer to recover any leftovers.  And she tried to certify a class of similarly situated former property owners.  The district court certified the putative class in 2022, but since then, several developments have altered the relevant legal landscape.

These developments include our decisions on when former landowners can bring class-action takings suits.  In *Fox v. Saginaw County*, for example, we reversed a similar class certification and noted that the district court had failed to conduct the "rigorous analysis" required to certify a class under Federal Rule of Civil Procedure 23.  67 F.4th 284, 300–01 (6th Cir. 2023); Fed. R. Civ. P. 23(a)–(b).  *Fox* points the way here, as do other recent decisions.  Because the district court here did not conduct a rigorous analysis of the Rule 23 requirements, we vacate the class certification order and remand for further proceedings.

**I.**

The Michigan General Property Tax Act (GPTA) permits counties to foreclose on properties with unpaid taxes.  *See generally* Mich. Comp. Laws §§ 211.1–.155.  The county must first provide the property owner with several notices of tax delinquency and potential foreclosure, but if the owner fails to pay up, the county can move in and take the property.  *Id.* §§ 211.78b, 211.78c, 211.78f.  When a county does so, it takes "absolute title" to the property.

*Id.* § 211.78k(6). It can then sell the property at public auction and use the proceeds to pay off any unpaid taxes, interest, penalties, and fees. *Id.* § 211.78m(1)–(2).

But before 2020, the county would help itself to the rest. Under the GPTA, the county kept *all* of the auction's proceeds, not merely the amount necessary to cover the tax debt. *Fox*, 67 F.4th at 289. In other words, if a person owed $1,000 on a property worth $100,000, the county could seize the property, sell it, say, for $90,000, and pocket the extra $89,000. If that sounds like a classic taking without compensation, that's because it is. In 2020, the Michigan Supreme Court found that this statutory scheme violated Michigan's takings clause. *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434, 460–61 (Mich. 2020). In 2022, this Court found that it violated the federal Takings Clause. *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022). And in 2023, the U.S. Supreme Court agreed. *Tyler v. Hennepin County*, 598 U.S. 631, 639 (2023) (finding similar Minnesota scheme unconstitutional).

So the Michigan legislature amended the GPTA. In Public Act 256 of 2020 (PA 256), the legislature created a process that allowed former property owners to request a refund of any surplus proceeds. Mich. Comp. Laws § 211.78t. PA 256 provided a two-year statute of limitations for refund claims. *Id.* § 211.78*l*. And it barred claims that arose before the Michigan Supreme Court's *Rafaeli* decision unless the court were to decide that its decision applied retroactively. *Id.* § 211.78t(1)(b)(i). The court did just that in July 2024. *Schafer v. Kent County*, Nos. 164975/165219, 2024 WL 3573500, at *2 (Mich. July 29, 2024).

Now rewind a few years. Bowles sued Wayne County and its treasurer, Eric Sabree, under 42 U.S.C. § 1983 for violating the Fifth and Fourteenth Amendments. She alleged that in 2017, the county took her property with a fair market value of $36,600 and auctioned it for $14,000, keeping the difference. She alleged that her property sold for "far more than the Tax Delinquency," but did not specify the amount of her delinquency. R.17, Corr. Am. Compl., p.7, PageID 169. Then, she asked to certify a class defined as follows:

> All property owners formerly owning property from within the counties of Wayne and Oakland who, during the relevant statutory period, had said property seized by Defendants via the General Property Tax Act, MCL 211.78 et seq., which was worth more and/or was sold at tax auction for more than the total tax delinquency

and was [sic] not refunded the excess/surplus equity but excluding any property owner who has filed their own post-forfeiture civil lawsuit to obtain such relief.

R.33, Mot. for Class Cert. Br. in Supp., p.4, PageID 475.  Wayne County opposed her motion. Without any discovery, the district court certified the putative class on the pleadings.  Wayne County appealed under Federal Rule of Civil Procedure 23(f).  *See In re Sabree*, No. 22-0111, 2023 U.S. App. LEXIS 6218, at \*1–2 (6th Cir. Mar. 15, 2023).  We granted review, noting that recent legal developments "present[ed] significant obstacle[s] to class certification in class actions like this one."[1]  *Id.* at \*4.

It's worth spelling out those developments.  Intervening caselaw from this Court, the Michigan Supreme Court, and the U.S. Supreme Court, as well as amendments to the GPTA, have clarified or altered the landscape of takings law and class-certification law since Bowles first sued.  Here's a timeline of events.

- In July 2020, the Michigan Supreme Court held in *Rafaeli* that the (old) GPTA's operation with respect to tax foreclosure sales violated Michigan's Takings Clause. 952 N.W.2d at 460–61.

- That October, Bowles sued the county under § 1983 in federal district court.

- That same month, a district court certified a putative class in a similar takings suit against other Michigan counties.  *Fox v. County of Saginaw*, No. 19-cv-11887, 2020 WL 6118487 (E.D. Mich. Oct. 16, 2020).

- In December 2020, the Michigan legislature passed PA 256, effective January 1, 2021.  2020 Mich. Pub. Acts No. 256 (codified at Mich. Comp. Laws § 211.78t).  PA 256 created the process that former property owners could use to request surplus proceeds from tax sales.

- In April 2021, Bowles asked the district court to certify her proposed class.  Her class definition included former property owners seeking both surplus *proceeds* (the difference between the sale price and the tax debt) and surplus *equity* (the difference between the fair market value and the tax debt).

- In January 2022, the district court certified Bowles's putative class.  The court's analysis relied on the *Fox* decision from another judge in the same district court.  *See*

---

[1]We also decided a separate interlocutory appeal on sovereign immunity in this case. *Bowles v. Sabree*, No. 22-1912, 2024 WL 1550833 (6th Cir. Apr. 10, 2024).  We found that Wayne County did not share Michigan's sovereign immunity. *Id.* at \*2–3.  But we held that the county's treasurer, Eric Sabree, did (in his official capacity) share the state's qualified immunity, because once the county chose to serve as a foreclosing unit under the GPTA, state law required Sabree to carry out the foreclosures. *Id.* at \*3.  He "was duty bound to enforce state law." *Id.* (internal quotation marks omitted).

R.47, Op. and Order, p.32 n.11, 34, 42–43, PageID 714, 716, 724–25 (citing *Fox*, 2020 WL 6118487).

- In June 2022, we decided *Tarrify Props., LLC v. Cuyahoga County*, 37 F.4th 1101 (6th Cir. 2022), a class-action challenge to Ohio's tax-foreclosure system, which roughly mirrored Michigan's GPTA. A putative class of former landowners sued to get back the surplus equity of their properties. *Id.* at 1105. The district court denied class certification. *Id.* We affirmed because determining the fair market value of each potential class member's property—no easy task, even for experts—would have led to difficulties figuring out class membership and would have undercut the "efficiencies and ease of administration that might otherwise favor classwide resolution." *Id.* at 1105–07.

- In October 2022, we decided *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022). Finishing what *Rafaeli* started, we held that a Michigan county's refusal to pay compensation under the old GPTA violated the federal Takings Clause. *Id.* at 188. The county never sold the plaintiffs' foreclosed property at auction and so had no surplus proceeds; it transferred the property (so the complaint alleged) to other municipalities for the amount of the tax debt. *Id.* at 188–89. We explained how doing so effected a taking of the plaintiffs' equitable title, as recognized for centuries by Anglo-American property principles. *Id.* at 190–92.

- In March 2023, we permitted a Rule 23(f) appeal from the district court's certification of Bowles's putative class. *See Sabree*, 2023 U.S. App. LEXIS 6218. We stated that our decision in *Tarrify* presented a "significant obstacle" to certifying a class of plaintiffs seeking surplus equity. *Id.* at \*3. And we observed that Bowles's proposed class also included those claiming surplus proceeds and noted that a class action seeking surplus proceeds might not "present the same administrative difficulties present in a class action seeking surplus *equity*." *Id.* at \*4–5.

- In April 2023, we decided *Fox v. Saginaw County*. 67 F.4th 284. The plaintiff in *Fox* sued not only the county that took his property, but also twenty-six other counties that took other potential class members' properties. *Id.* at 290–91. We reversed the district court's class certification because Fox lacked standing to sue counties that had not injured him. *Id.* at 300. We also provided guidance for any renewed certification proceedings. And we questioned whether the district court had provided a "rigorous analysis" of the requirement that issues common to the class predominate over individual issues. *Id.* at 300–02. We suggested that the district court deal with at least these questions: (1) Would landowners prove damages by formulaic calculation or fact-specific mini-trials that would overwhelm common questions? (2) Would the county have unique defenses, like res judicata or standing, against class members? (3) How would third-party lienholders, like banks, factor in? *Id.*

- In May 2023, the Supreme Court decided *Tyler v. Hennepin County*, 598 U.S. 631, holding that the retention of surplus proceeds was a "classic taking" without compensation. *Id.* at 639. The case came up from Minnesota and the Eighth Circuit, but the Court's decision cited with approval Judge Kethledge's opinion for this Court in *Hall*. *Id.* at 638 (citing *Hall*, 51 F.4th at 190).

- In September 2023, we decided *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023). We clarified that when the government sells foreclosed property at a properly conducted public auction, a plaintiff can seek only the return of the surplus proceeds—not the surplus equity. *Id.* at 658–59. Because "the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure," we held that plaintiffs are entitled to "the amount of the sale above [their] debt and no more." *Id.* at 659.

- In July 2024, the Michigan Supreme Court decided *Schafer*, 2024 WL 3573500, holding that its decision in *Rafaeli* applied retroactively. *Id.* at *17. The court also ruled on the retroactivity and prospectivity of various parts of the 2020 amendments to the GPTA. *Id.* at *21–22.

To recap: after the district court certified the putative class, our decisions in *Hall* and *Freed* explained how foreclosure auctions implicated the Takings Clause, and our decisions in *Tarrify* and *Fox* clarified how class-action takings cases should work. A plaintiff can sue for surplus equity when there's no public auction (*Hall*), but not when there is one (*Freed*). And surplus equity claims are unmanageable in takings class actions (*Tarrify*), which, if it wasn't clear before, still require a rigorous analysis of Rule 23's requirements (*Fox*).

So as we did in *Fox*, we vacate the district court's certification order. The district court left too many questions unaddressed on a thin record, and we "have little understanding of how this suit would progress as a class action." *Fox*, 67 F.4th at 302. *Fox*, *Tarrify*, and our other decisions point in one direction—the district court did not require Bowles to actually prove, rather than plead, that her class complied with Rule 23.

## II.

We review a class certification order for abuse of discretion. *Mays v. LaRose*, 951 F.3d 775, 793 (6th Cir. 2020). A district court abuses its discretion when it applies the wrong legal standard or misapplies the right one. *In re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023). Failing to perform a rigorous analysis of the class action requirements is one way to misapply the right legal standard. *Id.*

## III.

Our legal system generally permits lawsuits "by and on behalf of the . . . named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Class actions are an exception to our

tradition of individual litigation. *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 348 (2011). Federal Rule of Civil Procedure 23 governs class actions and sets forth several requirements a plaintiff must satisfy to maintain a class. Under Rule 23(a), a plaintiff must show (1) that the proposed class is so numerous as to make joinder impossible, (2) that there are common questions of law or fact, (3) that the plaintiff's claims are typical of the class's, and (4) that the plaintiff, as class representative, will adequately protect the class's interests. For a suit like this, Rule 23(b)(3) also requires that issues common to the class "predominate over [those] affecting only individual members" and that the class vehicle be "superior to other available methods for fairly and efficiently adjudicating the controversy."

At each step, a plaintiff must prove, rather than allege, that he has met the requirements. Rule 23 "does not set forth a mere pleading standard"—a plaintiff seeking to certify a class "must affirmatively demonstrate his compliance" with it. *Wal-Mart*, 563 U.S. at 350; *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("The party seeking the class certification bears the burden of proof.").

The Supreme Court has emphasized time and again that "'it may be necessary for [courts] to probe behind the pleadings before coming to rest on the certification question,' . . . and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that the class fits Rule 23. *Wal-Mart*, 563 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Ordinarily, courts need more information than the pleadings provide to analyze matters thoroughly. *See Am. Med. Sys.*, 75 F.3d at 1079. That usually entails some opportunity for the parties to gather evidence, develop a record, or depose the other side. *Id.* Once they've done so, the court must then explain how the facts come together to satisfy the statutory conditions. Bare recitation of Rule 23's language does not suffice. Neither do conclusory findings or statements. The court must rather "forecast how the parties will conduct the litigation from the certification stage through the trial to the final judgment." *Fox*, 67 F.4th at 302.

**A.**

We first address the parties' wrangling over standing since it goes to our jurisdiction. Wayne County points to a quitclaim deed recorded in June 2017 (months after the county foreclosed) in which Bowles purported to transfer the property to her son for $1.00. This deed, the county submits, conveyed Bowles's interest in the surplus proceeds to another person, even if it couldn't convey the real property itself after foreclosure. If that's true, Bowles would be left without any injury, a prerequisite of Article III standing. *See Acheson v. Laufer*, 601 U.S. 1, 20–21 (2023). Her son would be the injured party. Bowles responds that the quitclaim deed had no force; she'd lost the real estate by June and thus had nothing to convey. The district court agreed, finding the deed "legally meaningless." R.47, Op. and Order, p.12, PageID 694.

We agree that the quitclaim deed did not deprive Bowles of standing, though for a slightly different reason. In Michigan, quitclaim deeds convey "all the estate which the grantor could lawfully convey." Mich. Comp. Laws § 565.3. So the question is whether the right to surplus proceeds from a property's sale is part of the estate. We find that under Michigan law, it's not.

As the Michigan Supreme Court recognized in *Rafaeli*, the right to collect surplus proceeds from a tax sale is a "cognizable, vested property right." *Rafaeli*, 952 N.W.2d at 461. The "vesting of fee simple title to the real property" in the county "does not extinguish [the right]." *Id.* It "is a separate property right that survives the foreclosure process." *Id.* But while the right flows from the sale of real property, it is not itself an interest in real property. It's personal property.[2]

To illustrate this point, the Michigan Supreme Court quoted at length its 1844 decision in *People ex rel. Seaman v. Hammond*, 1 Doug. 276 (Mich. 1844), calling it a "valuable" guide "in defining the nature and scope of th[e] right [to collect surplus proceeds]":

> The surplus money produced by the tax sale, is the property of the person who has the legal title to the land at the time of the sale, and the moment the amount is

---

[2]Like other states, Michigan recognizes that real property and personal property aren't just different—they're mutually exclusive. *People v. Fox*, 591 N.W.2d 384, 391 (Mich. Ct. App. 1998).

> ascertained . . . it is as absolutely his as though it were in his own keeping; and the right is personal—as unqualifiedly so as the ownership of any chattel; and although the surplus spoken of is produced by the sale of land, yet the right to receive and control it, no more follows title to the land, than does the ownership of the cattle and farming utensils that a man may happen to have on his farm when it is sold for taxes . . . .

*Rafaeli*, 952 N.W.2d at 455–56 (quoting *Seaman*, 1 Doug. at 281). The *Rafaeli* court explained how *Seaman* illustrated the longstanding property principle that "the delinquent taxpayer, not the foreclosing entity . . . would have been entitled to any surplus, which no more followed title to the land than the former owner's other personal property." *Id.* at 456. And more recent Michigan caselaw confirms this point. *See Alisa A. Peskin-Shepherd, PLLC v. Blume*, 974 N.W.2d 835, 836 (Mich. 2022) ("[P]roceeds of a real-estate sale are personal property.") (citing *Stewart v. Young*, 226 N.W.2d 222, 224 (Mich. 1922)); *Rieman v. Rieman*, No. 352197, 2023 WL 3398237, at *3 (Mich. Ct. App. May 11, 2023) (Proceeds of a sale "are not real estate, but personal property." (quoting *Stewart*, 226 N.W.2d at 224)).

So it's true that the quitclaim deed didn't convey anything, as the district court found. Because title vested absolutely in the county upon foreclosure, Bowles had no real property interest to give. But even if she had, the deed still wouldn't have conveyed her separate, *personal* property right to any surplus proceeds. Just as the real estate foreclosure didn't take Bowles's car, her TV, or her clothes, it didn't take her personal property right to surplus proceeds either. So the deed is irrelevant to Bowles's standing.

**B.**

We next consider the issue of surplus equity. Our decision in *Tarrify* barred certification of a putative class whose members sought to recover their property's surplus equity. Class actions come with an "implied requirement" of ascertainability ("that the putative class members can be readily identified based on the class definition"), and we found that an equity-based class could not meet it. *Tarrify*, 37 F.4th at 1106. Determining fair market value involves an "individualized assessment" of each property and requires "proof that is variable in nature and ripe for variation in application." *Id.* at 1106–07. And when mini-trials "become necessary to determine who is in and who is out, the class-action vehicle imposes inefficiencies rather than

ameliorates them." *Id.* at 1106. So Tarrify's class got the boot. Later on, our decision in *Freed* barred fair market value altogether as a post-sale measure of compensation. *Freed*, 81 F.4th at 659. We held that when a municipality sells foreclosed property at a properly conducted public auction, the former owner can claim "the amount of the sale above his debt and no more." *Id.*

In light of *Tarrify* and *Freed*, Bowles's proposed class definition fails. It includes former property owners seeking both surplus proceeds and surplus equity, and we cannot permit the latter. Bowles's recent briefing admits as much, and she has signaled her willingness to amend the class definition.

## C.

With surplus equity claims out, we are unsure whether Bowles herself can state a claim. If the district court amends the class definition to include only those seeking surplus proceeds, we are unsure whether Bowles would be a class member because the parties now dispute whether the sale of her property generated any. If it didn't, the county owed her no compensation, and she wouldn't fit the class definition. Since a class representative must herself "be part of the class," *Wal-Mart*, 564 U.S. at 348 (internal quotation marks omitted), this dispute goes to both typicality and adequacy. *See* Fed. R. Civ. P. 23(a)(3)–(4). Bowles cannot serve as class representative if her situation isn't typical of the class's, and "in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Am. Med. Sys.*, 75 F.3d at 1083.

For the first time on appeal, Wayne County contends that Bowles owed $13,821.61 in taxes and "at least $500" in fees to cover the auction expenses. Appellant Br. at 34–35. So when the property sold for $14,000, the county didn't have quite enough to cover everything. That amount would only have satisfied part of Bowles's debt. No surplus, no class membership, the county insists. Bowles strenuously objects, arguing that the county's "assertion is false." Appellee Br. at 20. Unfortunately, that's her entire argument. She offers no alternative numbers and never tells us how much she thinks her taxes and surplus were. On both sides, the problem is a lack of evidence. Because the district court certified this case on the pleadings, the parties have yet to conduct discovery, and we have a paper-thin record. Bowles's complaint originally

sought surplus equity and so only alleged her property's fair market value. That's no longer sufficient (or relevant) post-*Freed*. The county, meanwhile, tries to come up with the right numbers—surplus proceeds—but can't back anything up with citation to the record.**3** So who's right, we can't yet say. Appellate courts are the wrong place to try out new facts. *See United States v. Smith*, 74 F.4th 799, 802 (6th Cir. 2023). On remand, and perhaps with the benefit of discovery, the parties and the district court can clear up these factual questions.

The parties argue that Bowles's class membership sounds in Article III standing as well as adequacy and typicality. They disagree on whether the county owed her anything but seem to agree that the existence of surplus proceeds goes to whether Bowles had any injury. We think, though, that the parties' framing conflates the merits of Bowles's claim with her standing to bring it. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021); *see also Trump v. Hawaii*, 585 U.S. 667, 699 (2018) (distinguishing a case's merits from its justiciability). As several courts have recognized, "it is not unusual for the distinction between standing and the merits to cause conceptual trouble when a plaintiff alleges the deprivation of a dubious property or liberty interest." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020) (Barrett, J.). But the fact that a plaintiff might lose on the merits does not deprive the plaintiff of standing to sue. *CHKRS*, 984 F.3d at 489. Otherwise, courts would dismiss all losing claims for lack of standing. At this preliminary stage of the litigation, Bowles need only allege "a 'colorable' or 'arguable' claim that [the county] invaded a legally protected interest." *Id.* She's done that. She alleged that the county took her property without paying compensation, so hashing out the details of her tax debt (which will show whether the county owed her compensation) will go to the merits (and Rule 23 typicality and adequacy), not justiciability.**4**

---

**3**If the county does have the right numbers, we have questions about whether it complied with the GPTA. Under the version of the law then in effect, the "minimum bid" the county could accept had to include "[a]ll delinquent taxes, interest, penalties and fees due on the property" plus the "expenses of administering the sale." Mich. Comp. Laws § 211.78m(16)(a)(i)–(ii) (2014), *amended by* 2020 Mich. Pub. Act No. 255 (current version at Mich. Comp. Laws § 211.78m(16)(c)). So if Bowles's debts in 2017 totaled $14,321.61 or more, as the county thinks, the property's sale price of $14,000 came in below the minimum bid. Now, a few kinds of sales weren't subject to the minimum bid requirement. *See id.* § 211.78m(5). So maybe the county could lawfully accept a lower amount for Bowles's property. But again, we can't tell because this case lacks a complete evidentiary record.

**4**To be sure, the standing inquiry sometimes reaches forward a bit to borrow from the merits. *See Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 438 n.4 (6th Cir. 2024). For example, to have pre-enforcement standing to challenge a regulation, a plaintiff must intend to engage in conduct "affected with a constitutional interest," like

**D.**

We now turn to numerosity. Rule 23(a)(1) requires class numbers large enough to make joinder of all members impracticable. There's no specific cutoff, but "substantial" numbers will suffice. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (quoting *Am. Med. Sys.*, 75 F.3d at 1079). Classes generally run in the hundreds or thousands, though we've permitted one of thirty-five before. *Young v. Nationwide Mut. Ins.*, 693 F.3d 532, 542 (6th Cir. 2012). The "exact number of class members need not be pleaded or proved," but "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005) (internal quotation marks omitted).

The district court found that Bowles established numerosity because she asserted that more than 6,900 properties were sold with surplus proceeds in Wayne County since 2014. The court thought it "likely that the putative class will well exceed 35 members." R.47, Op. and Order, p.34, PageID 716. But in a footnote, the court also noted: "Although plaintiffs represent this fact [the 6,900 number] . . . the accompanying reference to exhibit C in support of this contention is not attached." *Id.* at p.34 n.12, PageID 716. The plaintiffs stated that they would "be submitting Exhibit C under seal via a separately filed motion," which they promised was "shortly forthcoming," but they never offered the exhibit. *Id.*

Relying on the purported contents of a never-submitted exhibit was error. Rule 23 requires more than just pleading numerosity. Bowles never "affirmatively demonstrate[d]" or "positively show[ed]" the proposed class's estimated numbers. *Wal-Mart*, 563 U.S. at 350; *Golden*, 404 F.3d at 966 (internal quotation marks omitted). Numerosity is a low bar to clear. If Bowles had evidence supporting the 6,900 number, she should have provided it.

On appeal, she gives us a link to a website that she says shows thousands of Wayne County properties that "have been foreclosed upon and sold at tax auction." Appellee Br. at 18–19. But that alone would not tell us how many potential class members there could be. We

---

speaking or publishing. *Id.* at 438 (internal quotation marks omitted). Making that determination can require a court to "trace the contours" of the alleged constitutional interest, "bleed[ing] into the merits." *Id.* at 438 n.4. But once a plaintiff has established standing, the merits inquiry does not dip back into standing. Here, Bowles does not have a pre-enforcement challenge, and there's no dispute that her claim, if true, would entitle her to a remedy.

don't just need to estimate how many properties were sold at auction; we need to estimate how many properties were sold at auction for more than the former owner's tax debt. *See Golden*, 404 F.3d at 966 (calling "unrefined measure[s]" ill-equipped to identify the class size "too speculative for purposes of the numerosity requirement").

On remand, the district court should require Bowles to provide something more to prove numerosity. There could be a class-in-waiting here. There may be a few thousand (or more) foreclosed properties that Wayne County sold for more than the former owners owed. And numbers in the thousands can make joinder impracticable and satisfy the numerosity requirement. *See Daffin*, 458 F.3d at 552. But the burden is on Bowles to show that's the case here, and she hasn't done so yet.

**E.**

Next, adequacy. Class representatives must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The same goes for class counsel. *See* Fed. R. Civ. P. 23(g)(4). Because class members "must act through class counsel," the representative parties' adequacy "turns in part on the competency of class counsel." *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007); *see also Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262–63 (2d Cir. 2021) (describing how courts have often analyzed class counsel's adequacy as part of the class representative's adequacy). We require a showing of competent representation from the named parties and counsel because a final judgment in a class action—including an unfavorable one—binds all absent class members. *See Am. Med. Sys.*, 75 F.3d at 1083.

The district court recited the proper legal standard, noting that representatives must have qualified counsel and common interest with the rest of the class to adequately prosecute the case. But while the district court found that Bowles had a common interest with other putative class members, it made no finding on class counsel. In the years since that certification order, courts have sanctioned or reprimanded several of Bowles's lawyers for unethical conduct in similar class action Michigan-takings cases. *See Wayside Church v. Van Buren County*, 103 F.4th 1215, 1224 (6th Cir. 2024); *Garcia v. Title Check, LLC*, Nos. 1574/1578, 2023 WL 2787298, at *2 (6th

Cir. Apr. 5, 2023). On remand, the district court may consider this and any other new evidence as it sees fit.

We do not prejudge the representative's or counsel's adequacy. We have neither the evidence nor the necessary argument to make that call. But the district court should take a careful look at the matter. Class counsel are fiduciaries to the class members and we have not hesitated to scrutinize their conduct. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). "Most class counsel are honorable," but class actions "create especially lucrative opportunities for putative class attorneys" that warrant oversight. *Id.* (internal quotation marks omitted). Many Wayne County residents may have valid claims against the county, and the district court should ensure that the class representatives and counsel can fairly represent their interests.

**F.**

Bowles also has to prove commonality and predominance. She must show that there "are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and that those questions "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3). At its heart, commonality requires that the class members suffer the same injury and bring claims that "depend on a common contention . . . capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350. But common questions do not alone make a class. We then have to "add up all the suit's common issues (those that the court can resolve in a yes-or-no fashion for the class) and all of its individual issues (those that the court must resolve on an individual-by-individual basis)" to "qualitatively evaluate which side 'predominates' over the other." *Fox*, 67 F.4th at 300. The predominance requirement "demands more than the commonality requirement." *Id.* at 301.

In *Fox*, the class certification order that we vacated failed on this front. We observed that the district court's sparse reasoning did not meet the Rule's standards, and we identified several individual issues that could plague takings class litigation, potentially to the point of vitiating its worth. *Id.* at 300–01. We asked the district court to consider (1) whether it would calculate damages formulaically or with fact-specific mini-trials, (2) whether the county would have unique defenses, like res judicata, against individual class members, and (3) how non-class

lienholders, like banks holding mortgages on certain properties, would factor into any recovery. *Id.* at 301–02.

This case is *Fox* redux. The district court determined that the computation of damages was "the only individualized issue" and that it did "not diminish the predominance of the common issue of an unconstitutional taking." R.47, Op. and Order, p.41–42, PageID 723–24. But it gave us little more than that. Because the district court did not address the potential difficulties that could hamper damages calculations, it left us with "little understanding of how this suit would progress." *Fox*, 67 F.4th at 302. On remand, the district court must conduct a more thorough analysis and "forecast how the parties will conduct the litigation." *Id.* It should weigh *Fox*'s concerns—formulaicity, defenses, lienholders—and any others it finds relevant.

**G.**

Rule 23 also requires, as relevant here, that class litigation be superior to individual attempts at recovery. Fed. R. Civ. P. 23(b)(3). Put another way, we ask "whether the proposed class action beats the conventional approach of resolving disputes on a case-by-case basis in terms of efficiency and administrability." *Tarrify*, 37 F.4th at 1106. For example, if many proposed class members seek small damages amounts or have limited resources, one case pooling all claims might be better on time and cost fronts than several individual ones, for both the litigants and the judiciary. *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630–31 (6th Cir. 2011); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 758 (6th Cir. 2013).

The district court found that Bowles satisfied the superiority requirement because at that time, PA 256 seemed to exclude the putative class members from seeking compensation through its statutory process. PA 256 barred relief for former owners whose claims had already arisen unless the Michigan Supreme Court made its *Rafaeli* decision retroactive. On appeal, the parties keep trading shots over *Rafaeli* and the statutory structure, framing the superiority analysis around Michigan law.

As an initial matter, the Michigan Supreme Court recently decided *Schafer*, which declared *Rafaeli* retroactive and PA 256's statute of limitations prospective. *Schafer*, 2024 WL

3573500. On remand, the district court can update its superiority analysis in light of that case. But we have a broader observation to make. We think that the parties and the district court have been asking the wrong question. (Or, at least, an incomplete one.) Under Rule 23, the question isn't just whether a class-action § 1983 suit is superior to state administrative adjudications. It's also whether a class-action § 1983 suit is superior to *multiple individual* § 1983 suits. Rule 23 requires superiority over all "other available methods" of resolving the case, and that includes an individual suit of the same nature as the class's. Fed. R. Civ. P. 23(b)(3).

Another point on the GPTA. The Michigan legislature made its statutory process "the exclusive mechanism" for a claimant to seek compensation, and the parties lock onto this language while debating superiority. Mich. Comp. Laws § 211.78t(11). Wayne County even argues that this provision precludes any federal suit. But a plaintiff with a federal constitutional claim under § 1983 can always go straight to federal court. *See Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019). "The Civil Rights Act of 1871, after all, guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials, and . . . exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983." *Id.* (internal quotation marks omitted). Still, as far as superiority goes, we're not sure that really matters. Asking whether the GPTA's "exclusive mechanism" provision preempts a federal suit is the wrong question.[5] (It does not and cannot. *See id.*[6]) Again, the fact that an *individual* litigant can bring a § 1983 claim without exhausting state processes does not tell us whether a § 1983 *class action* is superior to all alternatives. Rule 23 asks whether collective litigation trumps other options, not whether it's

---

[5]Bowles rightly flags *Knick*, 588 U.S. 180, which the county ignores. But she too focuses on whether state law can preclude a class action, not whether a class action is superior.

[6]Along similar lines, the county cites *DeVillier v. Texas*, 601 U.S. 285 (2024), for the proposition that a plaintiff with an available state remedy cannot bring a federal takings claim in federal court. The county misconstrues that case. DeVillier attempted to sue the state of Texas for takings violations directly under the Fifth Amendment, not § 1983. *DeVillier*, 601 U.S. at 290. Because § 1983 does not authorize suits against a state, DeVillier's strategy to haul Texas into court was to argue that the Fifth Amendment is uniquely self-executing and itself provides a cause of action. *Id.* Because it later came out that Texas law provided its own cause of action for federal takings claims, the Supreme Court remanded the case without deciding anything. *Id.* at 293. None of that matters here. DeVillier sued Texas, which has sovereign immunity that § 1983 did not abrogate. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). Bowles sued Wayne County, which does not have sovereign immunity and which can be sued under § 1983. *See Knick*, 588 U.S. at 185; *N. Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193–194 (2006); *see also Bowles*, 2024 WL 1550833, at *2–3.

permitted by them. Bowles must "affirmatively demonstrate" that kind of superiority moving forward. *Wal-Mart*, 563 U.S. at 350.

## IV.

Wayne County expropriated property from Michiganders and pocketed cash that it owed them in return. In other contexts, we might call that "theft." *Hall*, 51 F.4th at 196. And to some observers, the county might now appear to be dragging its feet in hopes of running out the clock on any claimants.

Whether a class action would serve best to right these wrongs remains to be seen. We do not prejudge whether Bowles can make one out. The district court now has the benefit of four extra years' caselaw finetuning our takings doctrine and its interaction with Rule 23's demands. But one way or another, the county needs to pay up. After all, the "taxpayer must render unto Caesar what is Caesar's, but no more." *Tyler*, 598 U.S. at 647.

We vacate the district court's order certifying the class and remand for proceedings consistent with this opinion.