**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2486-23

LYNETTE JOHNSON,

    Plaintiff-Appellant,

v.

CITY OF EAST ORANGE,
ANNMARIE CORBITT, in her
official capacity as Collector of
Taxes, and TED R. GREEN, in
his official capacity as Mayor of
EAST ORANGE,

    Defendants-Respondents.

_____

Argued on May 8, 2025 – Decided June 27, 2025

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000016-23.

David J. Deerson (Pacific Legal Foundation) of the California Bar, admitted pro hac vice, argued the cause for appellant (David J. Deerson, Jonathan M. Houghton (Pacific Legal Foundation) and Christina M. Martin (Pacific Legal Foundation) of the Washington, Oregon,

and Florida bars, admitted pro hac vice, attorneys; David J. Deerson, Jonathan M. Houghton and Christina M. Martin, on the briefs).

Elliott J. Almanza argued the cause for respondents (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi and Elliott J. Almanza, of counsel and on the brief).

PER CURIAM

Plaintiff Lynette Johnson appeals from a March 19, 2024 order that granted summary judgment to defendants City of East Orange, Annmarie Corbitt, and Ted R. Green, and dismissed plaintiff's claim of an unlawful taking after the City sold her commercial property following an in rem tax foreclosure and retained the surplus equity. She argues the City's retention of equity in excess of the amount necessary to extinguish the tax lien constitutes an impermissible taking without just compensation under the United States Supreme Court's holding in Tyler v. Hennepin County, 598 U.S. 631 (2023).

The Pacific Legal Foundation, plaintiff's counsel in the instant matter, represented the plaintiff in Tyler, and appeared as amicus curiae in both the appellate, 257-261 20th Avenue Realty, LLC v. Roberto (Roberto I), 477 N.J. Super. 339 (App. Div. 2023), and state Supreme Court, 257-261 20th Avenue Realty, LLC v. Roberto (Roberto II), 259 N.J. 417 (2025), proceedings in what became the first published authority applying the holding in Tyler in this state.

Before our Supreme Court, the Pacific Legal Foundation presented the question of "whether a party may file a claim for just compensation alone when a foreclosure has been finalized and a taking of equity has already occurred, but the taking is within the relevant statute of limitations." Roberto II, 259 N.J. at 442 n.3. Our Supreme Court, however, declined to answer that question as an amicus generally cannot expand the issues on appeal. Ibid.; see also State v. O'Driscoll, 215 N.J. 461, 479 (2013); State v. Gandhi, 201 N.J. 161, 191 (2010).

This case, however, squarely presents that unanswered question. In light of the discussion below, we reverse and remand for further proceedings.

I.

In March 2014, plaintiff purchased a commercial property located at 250 Tremont Avenue in East Orange for $55,000. The property contained a vacant structure which was in a state of blight and disrepair due to a fire. On the deed, plaintiff's address was listed as the 250 Tremont Avenue property.

Prior to closing, plaintiff signed a "Letter of Agreement" (LOA) with the City, which provided she would renovate the property and not occupy it until she obtained a certificate of conformity from the City. On the first page of the LOA, plaintiff designated her residence in Newark as her mailing address.

Plaintiff planned to renovate the property so that her two adult children could operate a business there. Although she retained an architect to assist with the renovations, the project was put on hold while plaintiff cared for her terminally ill spouse. Notably, because the property was unoccupied, plaintiff never placed a mailbox on the property.

Throughout 2015, the City mailed property tax notices and bills to plaintiff at the property's address, not her residential address in Newark. The City maintained it mailed these items in accordance with N.J.S.A. 54:4-38.1(a) and N.J.S.A. 54:4-64(a). It contended it was unaware whether these mailings were returned "undelivered" because it did not keep records with respect to undelivered mail. According to plaintiff, because she received no notices at her home address, and because the property had not yet been certified for occupancy, she did not believe any taxes were due and accordingly made no payments in 2015.

On October 1, 2015, at an electronic auction, Corbitt sold the tax lien on the property to the City for $4,787.76, the total amount of the tax liability plus interest, penalties, and costs. The City again sent notice of the lien to the property, not to plaintiff's residential address. Approximately two weeks later, plaintiff obtained a construction permit from the City to proceed with roofing

4

and siding work at the property. According to plaintiff, at no point during the permitting process or thereafter did the City inform her of the tax delinquency or the lien.

On September 7, 2017, the City filed a complaint for foreclosure. The City sent notices of the action to the property, which were returned as undeliverable because the property was vacant. It again did not send any mailings to plaintiff's residential address. The City also posted a notice at the property. The attorney representing the City in the foreclosure action stated he "ran various Lexis searches," reviewed the deed of record, and the most recent municipal tax certificate, which all indicated the property's address as the proper mailing address. Plaintiff maintained she was unaware of the foreclosure action and accordingly did not appear at the proceedings.

On February 13, 2018, the trial court entered an order for final judgment, which barred plaintiff's redemption rights. According to plaintiff, at the time of the foreclosure judgment, the total tax debt on the property was $19,860.83. Defendants, however, insist the delinquency exceeded $55,000, which included $44,300.08 in outstanding property taxes, $1,435.03 in unpaid water bills, and $10,000 in vacant property registration fees. Plaintiff maintains the City failed to forward notice of this judgment to her residential address.

5

Plaintiff contended she learned of the foreclosure judgment on March 16, 2018. Her children immediately went to City Hall and offered to pay the outstanding taxes. City officials refused to accept payment, advising that it was too late to redeem, and the property now belonged to the City. On June 7, 2018, the City sold the property to private, third-party purchasers for $101,000. Although the sale price exceeded the total tax liability, the City retained the purported surplus proceeds. Plaintiff claims she is owed $81,139.17.

On December 1, 2021, plaintiff filed a complaint against defendants in the Law Division alleging a taking without just compensation in violation of the New Jersey Constitution and unjust enrichment. Defendants filed a pre-answer motion to transfer the matter to the Chancery Division, which the trial court granted. In their subsequently filed answer, defendants "[d]enied that the concept of 'surplus funds' exists in a tax foreclosure in this state and denied that there [was] any legal obligation of [d]efendants to pay any monies to [p]laintiff."

Defendants thereafter moved for summary judgment. They maintained plaintiff never provided the tax office with a mailing address different than the address of the property or paid taxes on the property. Moreover, they mailed the notice of foreclosure to the property and the attorney listed on the property's deed, which was claimed and signed for.

A-2486-23

Plaintiff opposed defendants' motion and cross-moved for partial summary judgment and she sought "judgment as to [d]efendants' liability for the Takings Clause violations." In her Rule 4:46-2(b) statement, plaintiff contested defendants' $44,300.08 delinquency figure because, based on information from a "lien maintenance" computer program and a "Notice of In Rem Foreclosure of Tax Lien Titles," the arrears totaled $24,648.59. She further argued the City's mailings being returned undelivered put the City tax office on notice that the address for her at the property was incorrect, and if the tax office had knowledge of her home address from the LOA, that knowledge required it to send notices to her attention at her residential address in Newark.

On April 25, 2023, plaintiff filed a motion to hold the case in abeyance pending the United States Supreme Court's decision in Tyler. The trial court afforded the parties an opportunity to file supplemental submissions in light of Tyler.

To provide necessary context to our discussion, we briefly recite the facts and holding in Tyler, and our subsequent decision in Roberto I.

In Tyler, the petitioner failed to pay taxes on her residential property and the respondent county obtained a judgment against the property, which transferred limited title to it. 598 U.S. at 634-35. In July 2015, after the

7                                                      A-2486-23

petitioner failed to redeem during the three-year redemption period, the respondent took absolute title to the property.[1]  Ibid.  At that point, the outstanding taxes, penalties, and interest totaled approximately $15,000.  Ibid.  The respondent subsequently sold the property for $40,000, which extinguished the $15,000 debt.  Ibid.  The respondent retained the $25,000 in surplus equity.  Ibid.  Under Minnesota law, the petitioner had no opportunity to recover the surplus.  Ibid.

On August 16, 2019,[2] the petitioner filed a putative class action in federal court alleging the county's retention of the surplus equity constituted, among other violations, an impermissible taking under the Fifth Amendment.  Id. at 635-36.  After the district court dismissed the petitioner's suit for failure to state a claim, and the Eighth Circuit affirmed, the Supreme Court reversed.  Id. at 636, 647-48.

The Supreme Court found that Minnesota recognized a property interest in surplus equity.  Id. at 638-39.  As such, it was satisfied that while the

---

[1]  Although the April 2012 and July 2015 dates are not found in the Supreme Court's opinion, they are set forth in the District Court's opinion, Tyler v. Hennepin County, 505 F.Supp.3d 879, 885 (D. Minn. 2020).

[2]  The August 2019 date is also not found in the Supreme Court's opinion but can be found in the lower court filings.  Brief of Appellant Gerladine Tyler at 6, Tyler v. Hennepin Cnty., 26 F.4th 789 (8th Cir. 2022).

A-2486-23

respondent had the power to sell the petitioner's home to recover the unpaid property taxes, it "could not use the toehold of the tax debt to confiscate more property than was due." Id. at 639. By doing so, the Supreme Court concluded the respondent had effected a "classic taking in which the government directly appropriate[d] private property for its own use." Ibid. (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 324 (2002)). The Supreme Court held the petitioner properly stated a claim under the Takings Clause and was entitled to just compensation. Ibid.

After Tyler, we issued our decision in Roberto I, which held Tyler was entitled to pipeline retroactivity under our state's retroactivity principles. Roberto I, 477 N.J. Super. at 366. In Roberto I, the plaintiff filed a foreclosure complaint after purchasing three tax sale certificates against the defendant's commercial property. Id. at 350-51. After the defendant failed to timely redeem the property and failed to file an answer, the court entered a final judgment of foreclosure. Id. at 351.

Less than two months after judgment was entered, the defendant moved under Rule 4:50-1 to vacate the final judgment and to permit redemption. Ibid. The trial court granted the defendant's motion, finding that exceptional

circumstances warranted the granting of relief under Rule 4:50-1(f), and plaintiff appealed. Id. at 352-53.

The Roberto I court affirmed and found: (1) the vacation of the foreclosure judgment was warranted on equitable grounds; (2) under Tyler, New Jersey's allowance of the foreclosure of a property owner's surplus equity by a tax sale was an unconstitutional taking of private property; (3) Tyler was not entitled to full retroactivity because this would be unworkable and create a substantial hardship for taxing authorities and third-party purchasers; (4) Tyler applied retroactively to cases that were in the pipeline when it was decided; and (5) as the foreclosure judgment there had been reopened, it was a pending matter to which Tyler applied. Id. at 360-63.

After considering Roberto I, the trial court granted summary judgment to defendants, finding that Tyler's retroactive effect did not reach this case because the City obtained the foreclosure judgment in 2018 and plaintiff's present claim, first asserted in December 2021, was barred by the doctrine of laches. In its written opinion, the trial court found that plaintiff was not entitled to relief on her constitutional claim because, unlike the property owner in Roberto I, plaintiff had not proactively attempted to protect her equity in a timely fashion but had instead waited nearly four years to file her claim. The trial court noted

that the bona fide purchaser of the property had long enjoyed the benefit of title, and the City had retained the surplus equity in reliance upon the existing foreclosure statute.

In the trial court's view, plaintiff was seeking "the same type of full retroactivity" to matters that were no longer pending, which the Roberto I court had rejected because it would be unworkable and create a substantial hardship for taxing authorities and third-party purchasers. According to the trial court, plaintiff "argue[d] for [a] semantic application of the word 'pending' to her previously adjudicated . . . claim." The trial court rejected this argument and instead found "[w]hile her claim was literally open at the time Tyler was decided, it was not in the pipeline, the way the Roberto [I] court intended."

In further support of its decision, the trial court noted the United States Supreme Court had recently remanded for reconsideration in light of Tyler two cases involving dismissed claims seeking just compensation after a tax sale that were not direct appeals from foreclosure actions, i.e., Fair v. Continental Resource, 143 S. Ct. 2580 (2023), and Nieveen v. Tax 106, 143 S. Ct. 2580 (2023). The trial court stressed in both of those cases, the property owners asserted their claims of unconstitutional takings either immediately or shortly after they lost title to their respective properties. Thus, in the trial court's view,

these cases could not fairly be described as "separately filed actions," as plaintiff maintained, but were instead more in the Roberto I category of "pending tax sale foreclosures" that were in the pipeline when Tyler was decided.

The trial court also found "[a]t some point, equitable principles, such as those embodied in the doctrine of laches, apply and bar 'the prosecution of an equitable claim if the suitor has inexplicably, inexcusably[,] and unreasonably delayed pursuing a claim to the prejudice of another party.'" (quoting In re Est. of Thomas, 431 N.J. Super. 22, 30 (App. Div. 2013)). In conclusion, the trial court found "[p]laintiff . . . slept on her rights for nearly four years before asserting the claim that her equity was unconstitutionally confiscated, to the equitable detriment of defendants."

On January 9, 2025, roughly ten months after the trial court rendered its decision, our Supreme Court issued its opinion in Roberto II, 259 N.J. at 428, affirming as modified our decision in Roberto I. As relevant here, the Court found that New Jersey, like Minnesota in the Tyler case, "ha[d] long recognized a property right to surplus equity in different contexts." Id. at 443. It confirmed that, under Tyler, the pre-amendment version of the New Jersey Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137, was unconstitutional "to the extent it allows for the forfeiture of surplus equity without just compensation." Id. at 427.

Relying on Harper v. Virginia Department of Taxation, 509 U.S. 86, 97 (1993), and Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995), the Court affirmed that Tyler applied retroactively to pending cases on direct review in both the federal and state courts, without reliance on our state retroactivity principles, contrary to our conclusion in Roberto I. Roberto II, 259 N.J. at 440-41. Because the property owner's claim was on direct review, however, the Court declined to "determine whether full retroactivity is warranted in other cases," or "address or adopt the appellate court's analysis of that issue." Id. at 442 n.3. The Court also expressly declined to decide "whether a party may file a claim for just compensation alone when a foreclosure has been finalized and a taking of equity has already occurred, but the taking is within the relevant statute of limitations." Ibid.

## II.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny

13                                                                      A-2486-23

v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). When the moving party has carried its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013) (omission in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

## III.

## A.

We first address plaintiff's argument the trial court erred when it concluded her takings claim was barred by the doctrine of laches. Plaintiff contends the statute of limitations for a takings claim is six years, and thus maintains "laches cannot apply to bar a suit commenced within the limitations period." Additionally, notwithstanding her contention laches does not apply,

14

plaintiff avers "[e]ven if this case were eligible for a laches analysis, the equities weigh in [her] favor."

The doctrine of laches may be invoked to bar an equitable claim for which there is no applicable statute of limitations, where the claimant has unreasonably and inexcusably delayed in asserting the claim causing prejudice to the adverse party. Fox v. Millman, 210 N.J. 401, 417 (2012); Lavin v. Bd. of Educ. of City of Hackensack, 90 N.J. 145, 151-53 (1982). A takings claim is an action at law and is subject to a six-year statute of limitations.[3] Klumpp, 202 N.J. at 409-10. Where an action at law is governed by a statute of limitations, the equitable doctrine of laches cannot apply to bar a suit commenced within the limitations period. Fox, 210 N.J. at 419-20. Because plaintiff filed the present lawsuit within the applicable six-year statute of limitations, the trial court's reliance upon the doctrine of laches to dismiss plaintiff's takings claim was misplaced.

Notably, in Fox, our Supreme Court rejected the argument that it was appropriate to utilize laches to bar an action at law that was commenced within

---

[3] Although plaintiff's takings claim was brought pursuant to Article 1, paragraph 20 of the New Jersey Constitution rather than under the United States Constitution as in Tyler, our Supreme Court has observed that the State Constitution's "protections against governmental takings of private property without just compensation" are coextensive with the United States Constitution's Takings Clause. Klumpp v. Borough of Avalon, 202 N.J. 390, 405 (2010).

the otherwise applicable period fixed by the statute of limitations. Id. at 421-23. In so ruling, the Fox Court observed as follows:

> [E]ven were we to agree in principle that laches might be applied so as to shorten an otherwise permissible period for initiation of litigation, we would nonetheless conclude that only the rarest of circumstances and only overwhelming equitable concerns would allow for that result. . . .
>
> . . . [S]uch an extension would replace the regular and predictable time limits fixed by our Legislature through the statutes of limitations with a system in which no lawyer or litigant could be confident of the time that would govern the initiation of litigation. Substituting the equitable doctrine of laches for the clear guidance expressed in statutes of limitations would create a chaotic and unpredictable patchwork in which the only certainty would be the inconsistency of outcomes as different judges or, as in this matter, juries, evaluated timeliness individually. We see no reason to conclude that our regular, predictable, and uniform system of fixing timeliness through application of the statutes of limitations should be replaced with such an approach.
>
> [Id. at 422-23.]

As predicted by the Fox Court, the trial court's dismissal of plaintiff's claim here rested upon its individual evaluation of the timeliness of plaintiff's suit. Ignoring there was no recognized right in New Jersey to recover surplus equity in a foreclosure action involving a tax sale certificate in 2018, and the factual differences between the instant matter and Roberto I, the trial court

16

applied the doctrine of laches and introduced an element of uncertainty as to "the time that would govern the initiation of litigation," id. at 423, for this type of takings claim.

Moreover, this case hardly qualifies as one of such overwhelming equitable concern warranting the invocation of the doctrine of laches. To this end, it must be emphasized that, in Tyler, the petitioner did not file her complaint alleging a takings claim until slightly more than four years after the final foreclosure judgment. Because the Supreme Court did not invoke laches to bar the claim in Tyler, we do not discern it has any applicability here, given the almost identical facts.

As an alternative basis to affirm, defendants reprise their argument plaintiff should have raised her takings claim as an affirmative defense in the foreclosure action and that the entire controversy doctrine (ECD) now precludes the later assertion of this claim.[4] Defendants contend "the purposes of the ECD – judicial economy and efficiency – are derogated by permitting this lawsuit to proceed" and that the Supreme Court's July 12, 2023 temporary rule change further supports that plaintiff's takings claim was "'germane' to [the] tax

---

[4] Defendants raised the ECD as an affirmative defense in their answer and again on summary judgment, but it was not addressed by the trial court.

foreclosure." Therefore, the takings claim should have been asserted in that proceeding. Additionally, with respect to plaintiff's contentions she was unaware of the foreclosure and that her takings claim was not ripe until the foreclosure proceedings concluded, defendants maintain the City followed the statutory notice requirements and plaintiff did not need to "suffer an injury before asserting [her] rights" to the surplus equity.

Defendants further contend, relying upon State v. $3,000.00 in U.S. Currency, 292 N.J. Super. 205, 212-13 (App. Div. 1996), that it is "commonplace for a [litigant] to allege that a lawsuit will effect a constitutional injury, and assert that as an affirmative defense." In addition, they cite cases which support the proposition that a party may request interim restraints when faced with an impending harm. See Subcarrier Commc'ns, Inc. v. Day, 299 N.J. Super. 634, 636-38, 648-49 (App. Div. 1997) (denying preliminary injunctive relief in a trade secret matter); Waste Mgmt. of N.J., Inc. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 519-21 (App. Div. 2008) (detailing the requirements for an interlocutory injunction).

We are unpersuaded by these arguments and note defendants have not cited any precedent or authority that establish a takings claim for surplus equity should have, or could have, been asserted in the in rem foreclosure action. In

fact, defendants expressly denied that the concept of surplus equity exists in their answer.

The ECD seeks to assure that all aspects of the controversy between those who are parties to a litigation be included in a single litigation. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 98 (2019); Olds v. Donnelly, 150 N.J. 424, 431 (1997); R. 4:30A. The goals of the ECD are to "promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy." Olds, 150 N.J. at 431. Generally, application of the doctrine is left to judicial discretion based upon the factual circumstances in individual cases. Oliver v. Ambrose, 152 N.J. 383, 395 (1998).

When a party had a reasonable opportunity to fully litigate their claim in an earlier action, the ECD may be invoked to bar the raising of that claim in a second proceeding. Karpovich v. Barbarula, 150 N.J. 473, 481 (1997); Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C., 321 N.J. Super. 275, 284 (App. Div. 1999). The doctrine does not, however, "apply to bar component claims that are either unknown, unarisen[,] or unaccrued at the time of the original action." Hillsborough, 321 N.J. Super. at 283 (citing Circle

Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 294 (1995)); accord Dimitrakopoulos, 237 N.J. at 99.

"The New Jersey Constitution provides protections against governmental takings of private property without just compensation, coextensive with the Takings Clause of the Fifth Amendment of the United States Constitution." Klumpp, 202 N.J. at 405 (citing Mansoldo v. State, 187 N.J. 50, 58 (2006)). A takings claim accrues when the government takes property without compensation. See Knick v. Twp. of Scott, 588 U.S. 180, 194 (2019) ("[B]ecause a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."); Harrison v. Montgomery Cnty., 997 F.3d 643, 650 (6th Cir. 2021) (under federal law, the taking occurred when "the board adjudicated the foreclosure of [the landowner]'s property through the land bank process, not before").

The TSL "serves 'as a framework to facilitate the collection of property taxes.'" In Re Princeton Office Park L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 61 (2014) (quoting Varsolona v. Breen Cap. Servs. Corp., 180 N.J. 605, 620 (2004)). Most importantly here, prior to amendments passed in the wake of Tyler, discussed infra, the TSL permitted the retention of surplus equity

and, therefore, violated the Takings Clause of the Fifth Amendment.  Roberto II, 259 N.J. at 448.

Here, the taking did not occur, and plaintiff's claim did not accrue, until the City obtained a final judgment of foreclosure and failed to return the surplus equity.  Thus, it would be illogical to suggest plaintiff could have brought her takings claim before the taking occurred.  Further, the affirmative defense asserted under the Eighth Amendment in $3,000.00 in U.S. Currency, 292 N.J. Super. at 212-13, was well established, unlike here where there was no reason for plaintiff to believe she had a constitutional right to the surplus funds under the Fifth Amendment.

In rejecting defendants' ECD argument, we note courts from other jurisdictions have reached similar conclusions.  For example, in Harrison, 997 F.3d at 651-52, the plaintiff "challenge[d] only Ohio's extinguishment of her surplus equity—not its foreclosure of tax-delinquent property."  In rejecting the defendant's argument that plaintiff's claim should be barred because it could have been asserted during the foreclosure proceedings, the Sixth Circuit explained "[t]he taking, so far as federal law is concerned, happened when the Board adjudicated the foreclosure of [the plaintiff's] property through the land bank process, not before."  Id. at 650.  Similarly, in Sikorsky v. City of

Newburgh, 136 F.4th 56, 62-63 (2d Cir. 2025), the Second Circuit concluded res judicata did not bar plaintiff's claim for the surplus equity arising out of a foreclosure sale, despite two previous state court actions challenging the foreclosure, because the "harm did not occur until the City received (and began to 'retain') the money from the sale of the property."

Moreover, it was impossible for plaintiff to assert a takings claim in the foreclosure action in 2018, even assuming she had notice of it. In making their argument, defendants have misplaced their reliance upon Rule 4:64-5 which allows for the pleading of "germane crossclaims" in mortgage foreclosure actions. Rule 4:64-6 controls foreclosures of tax sale certificates which, prior to May 25, 2023, limited the defenses that could be asserted to those of "the invalidity of the tax or other lien, or the invalidity of the proceedings to sell, or the invalidity of the sale." It was only after the Supreme Court's July 12, 2023, "temporary rule change" to Rule 4:64-6, that an allegation of surplus equity was allowed to be made as a contesting answer in a tax sale certificate foreclosure case filed after May 25, 2023. This was, of course, long after the final judgment of foreclosure was entered here.

Also, years after the final judgment of foreclosure was entered, the New Jersey State Legislature, in response to Tyler, amended the TSL. L. 2024, c. 39.

22                                                                 A-2486-23

The new provisions were intended to "address the unfairness of the loss of that equity to property owners who lose property in a tax lien foreclosure," Sponsors' Statement to S. 3997 (June 20, 2023), which further supports the impossibility of asserting a claim for surplus equity in an in rem foreclosure action prior to Tyler.

B.

Finally, plaintiff argues the trial court erred in finding that the Tyler decision could not be retroactively applied to her "four-years-stale claim" because: (1) even though it "was literally open at the time Tyler was decided," it "was not in the pipeline, the way the Roberto [I] court intended"; and (2) plaintiff was in essence seeking "the same type of full retroactivity" to matters that were no longer pending. We conclude plaintiff's takings claim was neither stale nor untimely. Moreover, plaintiff has not attacked the validity of the foreclosure, but rather, simply challenged the disbursal of the funds in excess of the tax debt when the property was sold.

Contrary to the trial court's finding, the takings claim was pending when Tyler was decided and is currently on direct review separate and apart from the underlying foreclosure proceedings. Defendants' arguments based on Harper and Davis v. Michigan Department of Treasury, 489 U.S. 803 (1989), repeatedly

23

claim plaintiff seeks to reopen the finalized foreclosure to put the case back in the pipeline. The case, however, was timely asserted for the limited and exclusive purpose of obtaining just compensation for the government's retention of surplus equity and is viable notwithstanding the application of pipeline retroactivity.

Defendants' assertion the instant matter is "collateral," and therefore not on direct review, in the same way a petition for post-conviction relief is collateral to the related criminal proceedings, is supported by neither binding nor persuasive authority. The filing of a petition for post-conviction relief is fundamentally different as it seeks to disturb the underlying conviction. By contrast, plaintiff explicitly acknowledges the validity of the foreclosure and merely seeks just compensation for the surplus equity, if any.

Moreover, the Supreme Court has stated "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." Wall v. Kholi, 562 U.S. 545, 553 (2011). Here, plaintiff's takings claim is not a "reexamination" of the foreclosure judgment. Again, plaintiff expressly states she does not challenge the foreclosure. This matter, instead, is a separate claim for a previously unavailable legal remedy brought within the applicable statute of limitations.

24

Further, given this case's substantive and procedural similarity with <u>Tyler</u>, we conclude <u>Tyler</u> applies.[5] Both matters concern separate takings claims filed years after a finalized foreclosure, which neither Tyler nor plaintiff challenged. The <u>Tyler</u> Court's primary concern was the principle that a "government may not take more from a taxpayer than [they] owe[]." 598 U.S. at 639. The Court viewed disgorgement of the surplus equity as necessary under the Takings Clause given its purpose of barring the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." <u>Id.</u> at 647 (quoting <u>Armstrong v. United States</u>, 364 U.S. 40, 49 (1960)). We agree with those principles and conclude <u>Tyler</u>'s holding should be applied to plaintiff's separate and timely-filed claim.

Further, the <u>Tyler</u> Court was clearly untroubled about opening a floodgate of older takings claims in Minnesota through its ruling. There is likewise no evidence presented by defendants that there are an abundance of such claims

---

[5] <u>Roberto II</u> court rejected the argument that, historically, New Jersey has not recognized a right to surplus equity. 259 N.J. at 443. In doing so, our Supreme Court analogized the loss of surplus equity under the TSL to the satisfaction of a mortgage where the property is sold and the excess proceeds are returned to the seller, and surplus proceeds returned to the debtor after foreclosure of a security interest in the commercial context. <u>Ibid.</u> In light of this holding, we need not address defendants' pre-<u>Roberto II</u> arguments attempting to distinguish Minnesota's longstanding recognition of a right to surplus equity.

A-2486-23

pending in New Jersey such that our application of Tyler here would "open[] the floodgates of class action litigation against every tax sale certificate holder . . . who foreclosed a tax lien in the past six years." The applicable six-year statute of limitations provides effective guardrails to limit the possibility of a so-called "flood" of litigation in this area. Moreover, plaintiff highlights such a surge of takings claims is unlikely given the financial circumstances of those being foreclosed upon, and other courts' willingness to deny class status to Tyler-style cases. See Fox v. Saginaw Cnty., 67 F.4th 284, 301 (6th Cir. 2023); Tarrify Props., LLC v. Cuyahoga Cnty., 37 F.4th 1101, 1106-08 (6th Cir. 2022); Bowles v. Sabree, 121 F.4th 539, 545 (6th Cir. 2024).

C.

In light of the aforementioned conclusions, we reverse the trial court's March 19, 2024 order and remand for further proceedings. This conclusion is consistent with the principles established in Tyler and supports the notion that "[t]he taxpayer must render unto Caesar what is Caesar's, but no more." 598 U.S. at 647. Further, in light of our decision, we need not address the parties' arguments with respect to the sufficiency of notice given of the foreclosure action.

On remand, the trial court shall allow for further factual development with respect to the amount of surplus equity retained by East Orange as the amount cannot be determined on the instant record. As plaintiff notes, defendants believe that the tax debt owed on the property totaled $44,300.08, including interest. Plaintiff maintains that the total tax debt was no more than $25,000. Therefore, further development of the record on this point is required.

To the extent we have not addressed specifically any of plaintiff's remaining arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2486-23